# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES STURDIVANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 8186 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff James Sturdivant's (Sturdivant) motion for summary judgment is granted, and Defendant Social Security Administration's (SSA) summary judgment motion is denied. This matter is remanded to the SSA for further proceedings consistent with this opinion.

## BACKGROUND

In December 2009, Sturdivant applied for Supplemental Security Income (SSI), contending that he has severe physical and mental impairments, including back and knee pain, left ulnar neuropathy, and obesity. In March 2010, Sturdivant's SSI was denied and in August 2010, Sturdivant's request for reconsideration was

1

denied. Sturdivant then requested an evidentiary hearing before an Administrative Law Judge (ALJ). After a hearing, the ALJ denied the claim for SSI, and the Appeals Council subsequently denied Sturdivant's request for review. Sturdivant then filed the instant appeal. Sturdivant has filed a motion for summary judgment, seeking to have this case remanded to the ALJ for further proceedings, (P SJ Mem. 20), and Defendant has filed a motion for summary judgment seeking to have the ALJ's decision affirmed.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## DISCUSSION

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the

ALJ "compares the impairment to a list of impairments that are considered conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work" and "[i]f the applicant can engage in other work, he is not disabled." *Id.*

In the instant appeal, Sturdivant argues: (1) that the ALJ erred in determining Sturdivant's RFC, (2) that the ALJ erred by failing to properly consider Sturdivant's mental impairments, (3) that the ALJ erred in analyzing Sturdivant's credibility, (4) that the ALJ erred by failing to properly consider Sturdivant's obesity, and (5) that the ALJ erred in rejecting the opinions of Dr. James Benson (Benson), a treating physician.

I.  RFC Determination

Sturdivant argues that the ALJ failed to properly consider Sturdivant's limitations from his left ulnar neuropathy or his limitations in standing and walking in making the RFC determination. The ALJ found that Sturdivant has the capacity to "perform less than the full range of light work as defined in 20 C.F.R. 416.967 (b)." (AR 30). In determining an applicant's RFC, the ALJ "must evaluate all relevant evidence . . . including evidence of impairments that are not severe." *Arnett v.*

*Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). An ALJ is not required to "mention every snippet of evidence in the record," but an ALJ "must analyze a claimant's impairments in combination" and "may not ignore entire lines of contrary evidence." *Id.* at 592. An ALJ's decision should be upheld "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review." *Id.* at 591-92.

A. Limitations from Left Ulnar Neuropathy

Sturdivant contends that the ALJ erred by not including limitations from Sturdivant's left ulnar neuropathy in the RFC determination. Specifically, Sturdivant contends that the ALJ did not properly address Sturdivant's poor strength rating in his left wrist as a result of his ulnar neuropathy and failed to consider the effect of the limited occasional use of one hand on the capacity to work. The ALJ acknowledged that Sturdivant's severe impairments include left ulnar neuropathy. (AR 28). The record also includes a pain clinic output assessment which reported that at a physical exam in 2009, Sturdivant had a "left wrist weakness" score of 3/5. (AR 362). The ALJ concluded that there was no left wrist weakness limitation, stating that Sturdivant's "fine and gross manipulations were normal bilaterally" and that Sturdivant can carry items "using both upper extremities." (AR 31-32). The ALJ relied upon a report from an examination by Dr. Charles Carlton (Carlton) in 2010. (AR 31-32). However, in the report Carlton merely concluded that he believed Sturdivant "can safely carry and handle objects using both hands." (AR 300).

4

Carlton did not specifically address the effects of the weakness in Sturdivant's wrist that would be caused by the ulnar neuropathy, that the ALJ herself acknowledges exists. Whether Sturdivant was able to lift and carry items using his upper extremities is separate from the issue of whether Sturdivant's ulnar neuropathy would limit his use of his left wrist to occasional use and whether such occasional use would impact Sturdivant's capacity to do certain work. A review of the 2009 exam report shows that Sturdivant's muscle strength scores for his upper and lower extremities were 5/5, consistent with Carlton's conclusion and the ALJ's conclusion that Sturdivant could lift and carry items with his upper extremities. (AR 362). However, the 2009 exam also separately noted the wrist limitation, and the 3/5 strength score for his left wrist, which presented a separate limitation issue. (AR 362). Benson had also indicated in his report that Sturdivant had a significant reduction in the dexterity of his left hand. (AR 485). The ALJ even recognized in her decision that the occasional use of one hand by Sturdivant could be a relevant consideration, noting that Sturdivant's dominant hand was his right hand. (AR 32). The ALJ also posed a question to the Vocational Expert (VE) asking if the light work jobs discussed by the VE would be possible if the individual "was limited to occasional handling with his left non-dominant upper extremity" and the VE responded in the negative. (AR 74-75). It was incumbent upon the ALJ to adequately develop the record on the issue of whether Sturdivant's limitation in his left wrist would exclude certain jobs and the ALJ failed to do so. *See Shauger v. Astrue*, 675 F.3d 690, 698 (7th Cir. 2012)(indicating that an ALJ has "the duty to

5

develop a full and fair record"). The ALJ noted that there was evidence that the Defendant was able to tie his shoe with his left hand, but that observation was not on point in addressing the limitation at issue relating to the Defendant's left wrist. It was not sufficient for the ALJ to simply conclude that since Sturdivant's dominant hand was his right hand, she therefore did not need to address the possible limitation on Sturdivant's left wrist. On remand, the ALJ should more fully develop the record relating to Sturdivant's left wrist condition, including, if warranted, further examinations of Sturdivant by medical consultants.

### B. Assessment of Standing and Walking

Sturdivant also contends that the ALJ erred in assessing Sturdivant's ability to sit and stand or walk for six hours in an eight-hour workday by not properly evaluating the evidence in the record before concluding Sturdivant was capable of light work. However, the ALJ thoroughly addressed Sturdivant's back and knee pain in her decision, noting, for example, that Sturdivant retained the ability to ambulate effectively on consultative examination. (AR 30-32). The ALJ noted that although Sturdivant has been assessed with degenerative disc disease, his X-rays showed it to be only a mild case. (AR 32). The ALJ also noted that the record indicates that Sturdivant used a back brace, and took certain medications to treat his back condition, and that Sturdivant indicated that his back pain was effectively treated with such measures. (AR 32). The ALJ also noted that Sturdivant has sought minimal treatment from the Pain Clinic. (AR 32). The ALJ also correctly noted that

6

in a recent checkup, Sturdivant denied any pain. (AR 32, 469). The ALJ was not required to specifically reference every piece of evidence relating to her assessment regarding Sturdivant's ability to walk and stand. The ALJ built a logical bridge between her conclusions relating to walking and standing and the record. Sturdivant has thus not shown that the ALJ failed to adequately consider Sturdivant's ability to stand and walk when determining Sturdivant's RFC.

II. Sturdivant's Mental Impairments

Sturdivant argues that the ALJ failed to properly consider Sturdivant's mental impairments. The ALJ found that Sturdivant's medically determinable mental impairments of depression, and history of substance abuse, considered singly and in combination, do not cause more than minimal limitation in Sturdivant's ability to perform basic mental work activities and are therefore non-severe. (AR 28).

A. Incorporation of GAF Scores into RFC

Sturdivant argues that the ALJ erred by failing to consider Sturdivant's lower Global Assessment of Functioning (GAF) scores, which indicate a serious mental impairment and, instead, focused only on his higher GAF scores. Sturdivant also argues that even if the higher GAF scores of 53 and 60 are more accurate, those scores still represent moderate to severe limitations which the ALJ did not incorporate in Sturdivant's RFC. The record shows that the ALJ acknowledged in

7

her decision that Sturdivant had received the lower GAF score of 50 and did not solely reference the higher GAF scores. (AR 28).

The ALJ noted that the record indicated that Sturdivant was not hospitalized for his mental impairments, that he was receiving regular treatment that indicates his condition is stable, and that he takes his medication relating to his mental condition only occasionally when he feels he needs it. (AR 28). In addition to noting Sturdivant's GAF scores, the ALJ determined Sturdivant's mental limitations were nonsevere by considering the disability regulations for evaluating mental disorders. (AR 29). The ALJ discussed each functional area and the evidence in the record supporting her decision regarding each functional area. (AR 29). The ALJ also properly relied on evidence such as the report of the reviewing psychologist, Dr. Lionel Hudspeth, in concluding that Sturdivant's mental impairments were not severe. (AR 28-29, 33, 311-23). Therefore, the ALJ did not err in her consideration of Sturdivant's GAF scores.

B. Limitations in Concentration, Persistence or Pace

Sturdivant also argues that the ALJ did not reflect the limitations in concentration, persistence or pace the ALJ found Sturdivant had in Sturdivant's RFC. (AR 29). The ALJ found that Sturdivant had no limitations in activities of daily living, social functioning, or episodes of decompensation. (AR 29). The ALJ noted that Sturdivant had "no more than mild limitation" in the third functional area of concentration, persistence or pace. (AR 29). The ALJ went on to discuss

evidence in the record showing that Sturdivant did not have serious concentration, persistence, or pace deficiencies, in areas such as Sturdivant's ability to watch television and movies, Sturdivant's ability to use the computer, Sturdivant's ability to perform basic calculations, and Sturdivant's statement that his pain does not interfere with his concentration. (AR 29). The ALJ supported her conclusion relating to concentration, persistence, or pace by referencing the record, and although Sturdivant disagrees with the ALJ's ultimate conclusion, Sturdivant has not shown that the ALJ failed to consider evidence in the record or that the substantial evidence fails to support the ALJ's conclusion. Therefore, the ALJ did not err by failing to include limitations relating to Sturdivant's concentration, persistence, or pace in Sturdivant's RFC.

III. Sturdivant's Credibility

Sturdivant also contends that the ALJ erred by failing to properly assess the credibility of Sturdivant. Although an ALJ's credibility determinations are given deference, that deference is "not unlimited . . . ." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (stating that "[t]he ALJ must consider a number of factors imposed by regulation . . . and must support credibility findings with evidence in the record"); *see also Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (stating that a court will reverse "[a]n ALJ's credibility determination only if the claimant can show it was 'patently wrong'"). The ALJ found Sturdivant's medically determinable impairments could not reasonably be expected to cause the alleged symptoms. (AR

9

31). The ALJ also found that Sturdivant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC. (AR 31). The ALJ concluded that Sturdivant's "allegations of greater pain and limitations are not supported by the evidence as a whole." (AR 31).

Sturdivant argues that the ALJ erred in analyzing Sturdivant's credibility by not addressing the factors required by SSR 96-7p, which provide guidance relating to the evaluation of symptoms in disability claims and assessing the credibility of a claimant's statements as to symptoms. SSR 96-7p. In addition to documentary evidence in the record relating to Sturdivant's pain levels, Sturdivant testified himself as to the daily severe pain that he suffers and the limitations it places on his activities. (AR 56-59). The ALJ discussed the evidence in the record regarding Sturdivant's back pain, knee pain, left ulnar neuropathy, asthma, and obesity to support the ALJ's finding that the "residual functional capacity reached . . . is consistent with the objective medical evidence, the abnormal clinical findings, the mental health longitudinal medical history, and the observations of the claimant's treating and examining physicians." (AR 31-32). The ALJ also noted that Sturdivant had reported in May 2009 that Tylenol and Motrin relieved seventy percent of his pain. The ALJ also noted that in May 2010, Sturdivant's back pain was relieved with his brace, that Sturdivant had not attended physical therapy or had more significant treatment, and that Sturdivant reported a lack of pain at a recent examination. (AR 32). The ALJ was not required to specifically mention every

piece of evidence relating to Sturdivant's claims of limitations due to pain and the ALJ adequately assessed Sturdivant's claims with one minor exception. Sturdivant correctly points out that the ALJ failed to address the effectiveness of other medications taken by Sturdivant that are mentioned in the record such as tramadol. (AR 341); *see Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)(indicating the ALJ, in assessing the claimant's credibility should consider the "dosage and effectiveness of any pain medications, [and] other treatment for the relief of pain"). Therefore, the ALJ on remand should conduct a fuller inquiry into the dosages and effectiveness of all medications taken by Sturdivant as it relates to Sturdivant's disability claim.

IV. Obesity

Sturdivant argues that the ALJ erred in finding Sturdivant is capable of sitting, standing or walking for six hours in an eight-hour day without considering the effects of Sturdivant's obesity on his arthritis. The ALJ notes that "there is no listing for obesity; however, the undersigned has considered the additional and cumulative effects of the claimant's obesity . . . ." (AR 30). The record thus indicates that the ALJ considered the combined effects of Sturdivant's arthritis and obesity in her decision. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004)(indicating that an ALJ should consider the cumulative effect of arthritis and obesity). The ALJ also acknowledged that Sturdivant's obesity could contribute to his complaints of back and knee pain, but the ALJ noted that there is no evidence to show that

Sturdivant's obesity precludes all work activities. (AR 32). Sturdivant has thus failed to show that the ALJ failed to properly consider Sturdivant's obesity.

IV. Benson's Opinion

Sturdivant argues that the ALJ erred by rejecting the opinion of Benson, a treating physician. Generally, "a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Schmidt v. Astrue*, 496 F.3d 833, 842-43 (7th Cir. 2007). However, an ALJ is permitted to give less weight to a treating physician's medical opinion if it "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as [the ALJ] minimally articulates [her] reasons for crediting or rejecting evidence of disability." *Id.* (internal quotations and citations omitted). The ALJ concluded that Benson's opinion was not entitled to any weight because it was not based on any significant long-term treating relationship with Sturdivant, and because Benson is not a specialist. (AR 33). The ALJ indicated that Benson's opinion is based on a single examination, that his opinions are based on Sturdivant's subjective complaints, and that the restrictions contained in the opinion are not supported by the evidence or the objective findings in the opinion itself. (AR 33). When making a substantial evidence determination, the court should consider the entire administrative record but the court's role is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for

that of the Commissioner. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, the ALJ also had a duty to build a logical bridge to her conclusions. The ALJ explicitly stated that she "rejects" the opinion of Benson. (AR 33). However, the ALJ failed to properly explain her reason for such a drastic step. The ALJ noted that Benson had only examined Sturdivant on one occasion, but the ALJ failed to explain why Benson was automatically precluded from being deemed a treating physician due to the limited time treating Sturdivant. The ALJ also stated that "it is clear that [Benson's] opinion is based on [Sturdivant's] subjective complaints." (AR 33). However, the ALJ fails to explain such a conclusion. A review of the report prepared by Benson provides various details relating to his diagnosis. (AR 485). The ALJ did not adequately explain her conclusions when she concluded that Benson based his statements only on subjective complaints from Sturdivant. The ALJ also states that "there is no support in the opinion for the finger dexterity limitations." (AR 33). However, if the report prepared by Benson, the treating physician, was not adequately supported or clear to the ALJ, the ALJ should have adequately developed the record further regarding the basis of Benson's opinion. Sturdivant has shown that the ALJ did not adequately provide justification to reject Benson's opinion.

     Therefore, based on the above, Sturdivant has shown that the ALJ erred in her RFC determination relating to Sturdivant's ulnar neuropathy, erred by failing to fully address the effectiveness of the medications taken by Sturdivant for pain, and erred by failing to justify her rejection of Benson's opinion.

## CONCLUSION

Based on the foregoing analysis, Sturdivant's motion for summary judgment is granted and the SSA's motion for summary judgment is denied. This matter is remanded to the SSA for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 26, 2013